JACKSON et al. v. OVERTON. (No. 3269.)

Court of Civil Appeals of Texas. Amarillo.
May 15, 1929.

Rehearing Denied June 12, 1929.

Vickers & Campbell, of Lubbock, for appellants.

Lockhart, Garrard & Brown, of Lubbock, for appellee.

RANDOLPH, J. This suit was brought by Overton against Jackson, as owner, and Maxey, as contractor, seeking to enjoin them from erecting a business house on lot 5 in block 121, Overton addition to the town of Lubbock. On trial on the merits before the court, without the intervention of a jury, a permanent injunction was granted, and judgment was entered restraining the defendants,

Jackson and Maxey, from proceeding with the erection of said building. From this judgment, the defendants have appealed.

The original town of Lubbock was platted to cover 640 acres of land. G. A. Rush owned a section, or 640 acres, lying immediately west of the Lubbock town section. Rush conveyed to Dr. M.· C. Overton 534 acres· out of this section so owned by him on the west of the Lubbock town site, leaving a strip between the Rush section and the Lubbock town site on the east. Out of this strip, and on the east of it, a strip 100 feet wide was reserved for a contemplated railroad right of way. When this railroad did not materialize, this 100-foot strip that had been reserved for right of way, became Rush avenue, and later Avenue Q. Dr. Overton testified that, when he made his original purchase of the 534 acres from Rush, it was understood that he was later to get this strip (except the railroad right of way) at the same price per acre as he paid for the 534 acres.

Overton and his wife executed a dedication deed which was dated August 2, 1908, but which was not acknowledged until August 8, 1908, and which was filed for record in the deed records of Lubbock county on the same day, in which they stated that they have mapped and platted the land later described therein into lots, blocks, streets and alleys, as shown by the map "now of record on Page 56, of Vol. 19, Lubbock County deed records," and as further shown by the map or plat attached to said deed; said platting to be known as the Overton addition to the town of Lubbock. Referring to the page of the record called for, it appears that the clerk had pasted a map on that page and that this record had been partially destroyed, except the north tier of blocks. A map was introduced in evidence, which Dr. Overton testified was a copy of such original map. This map shows that Rush or Q avenue runs along the east side of the Overton addition, and that Broadway avenue, 100 feet wide, runs approximately through the middle of the plot, east and west.

The contention of the plaintiff, Overton, is that all the lots on Broadway in the addition were restricted to residences only, and that, as the defendants were engaged in the erection of a business house on lot 5, and as this was a violation of the restriction, the defendants should be restrained from doing so.

The plaintiff, Dr. Overton, testified that he had executed another dedication deed, and had had two other maps recorded. From the copy of the original map it appears that such map had this notation on it: "Broadway is restricted to certain priced dwellings." This notation was also on the second map introduced, but a third map, recorded in November, 1908, had no such notation. The plaintiff also introduced much testimony as to Broadway being a restricted·street. We do not deem it necessary to consider the mass of testimony introduced for ·that purpose, for the reason that we do not think it is at all conclusive of the rights of the parties herein, and we will not consider· the many other questions and propositions of law advanced by each of the parties further, but will proceed to discuss the question which controls the disposition of the case in our opinion.

Whether or not Rush and the purchasers of lot No. 5, under him, had notice of the limitation placed upon sales of the lot on Broadway by Dr. Overton, either through restriction clauses in the dedication deeds or by the reputation given to the lots on Broadway, is established, becomes immaterial if the ownership of said lot 5 was not in Dr. Overton at the time of the placing of the restriction on Broadway avenue.

By deed dated August 1, 1908, signed August 7, 1908, G. A. Rush and wife conveyed to Dr. Overton the above-mentioned strip of land east of the 534 acres originally purchased from Rush by Overton.

By deed dated August 7, 1908, Overton conveyed to Rush lots 1, 2, 3, 4, and 5, in block 121, in the Overton addition to the town of Lubbock, which deed· was .filed for record August 7, 1908, and which lots were a part of the aforementioned strip, and No. 5 being the lot in controversy.· This deed did not become effective until it was acknowledged and delivered, which was the same day upon which the deed from Overton to Rush was acknowledged. While the deed from Overton to Rush recited a cash consideration of $250, yet that not being the true consideration, the · real consideration could be shown; it not being contractual.

The · plaintiff, Dr. Overton, while on the stand as a witness in his own behalf, testified as follows:

"I am the plaintiff in this case. I have lived in Lubbock for about twenty-seven years. In 1907 I owned a part of Section 2, Block O, adjoining the original town of Lubbock. I determined, some time in September of that year, to cut up into lots and blocks, streets and alleys, a part of that section No. 2, and I did do so. I had that part, that was then cut up into blocks, lots, streets and alleys, named the 'Overton Addition' and dedicated as an addition to the town of Lubbock. The map that has been introduced in evidence here, was a copy of the original map that I had made.

"Relative to the 'Rush Strip' of land I entered into a contract to get from Mr. Rush all except what he had already sold individually to other individuals, and that had had a railroad survey down that side, and there was an arrangement that we would hold that, I think for one year, and if the railroad shouldn't use it, that I would obtain

that at the same amount in acres as if it had been sold. I do not have the original contract that I executed with Mr. Rush. I guess it has been destroyed. I do not remember whether that agreement I had with Mr. Rush was in writing, or oral. * * *

"At that particular time I did not own that strip of land. I have a further explanation why that was left open. Mr. Rush and I had an agreement with reference to the use of that property for railroad purposes. * * *

"At the time Mr. Rush sold me this original tract, we had the understanding that if the railroad did not use that particular piece of land that he would convey it to me just as if it had been conveyed with the other, at the same amount per acre, and he later conveyed that to me. * * *

"It looks like that at the same time Mr. Rush executed his deed to me, conveying that property described in the deed in Vol. 18, Page 255, that I executed a deed back to him conveying him lots 1 to 5 in block 121 and both of us acknowledged before the same notary and delivered our deeds at the same time. I recall, at least my recollection is, that Mr. Rush had told me that he wanted that southeast corner there and we had an understanding that whenever I bought this that I would sell him that southeast corner. Mr. Rush was not keeping all of the east half of Block 121, he was buying it from me. I understood, before the deeds were executed, that Mr. Rush wanted to buy it and I deeded it back to him about the same time he deeded it to me, all done at the same time, according to my best judgment."

■ It is therefore apparent that these deeds were each a part of the same transaction, and, as between the parties, should be construed together. Baylor v. Hopf, 81 Tex. 637, 642, 17 S. W. 230.

. "It is a well established principle, that two deeds, or writings, executed at the same time, between the same parties, and in reference to the same subject matter, are to be taken as parts of the same contract and as forming one entire agreement." Howard v Davis, 6 Tex. 174, 180; Wallis v. Beauchamp, 15 Tex. 303, 306.

It cannot be said that the transaction disclosed by the deeds from Rush to Overton and from Overton to Rush was intended to be anything more than a separation of the five lots from the larger tract deeded by Rush to Overton, so as to separate those lots from the larger tract. In other words, the transaction of the delivery of the two deeds, as. testified to by the plaintiff himself, evidenced, not a conveyance from Overton to Rush, but a reservation by Rush of lots 1, 2, 3, 4, and 5, block 121, out of the larger tract conveyed to Overton by him.

■ Under the circumstances testified to by the plaintiff, it should not be held that the real title to lots 1, 2, 3, 4, and 5, ever vested in him (the plaintiff) by the deed to him from Rush. At the most it can only be said, as stated above, that the purpose apparent was to separate those lots from the larger tract. Overton held the legal title for an infinitesimal time, but never did own the equitable title.

The deed from Rush to Overton was followed immediately by a reconveyance of lots 1, 2, 3, 4, and 5 to Rush by Overton, and, in addition to the testimony of Overton on the trial, this deed, to Rush was evidence of recognition by Overton of the existence of the parol trust and that it was concurred in by him (Mixon v. Miles [Tex. Civ. App.] 46 S. W. 105, writ denied); hence it is clear that no real title passed to Overton to the lot in controversy.

Title to lot No. 5, being in Jackson by mesne conveyances from Rush, comes in to defendant Jackson clear of any such restriction; Rush's title not being clouded by it.

Regardless of the other questions presented, and without considering them, we hold that Overton was never such owner of the lot in controversy as to enable him to impress upon lot No. 5 any such restriction which he testifies he intended to place upon lots abutting on Broadway avenue.

. We therefore reverse the judgment of the trial court, and here render judgment that the plaintiff, Dr. Overton, take nothing by his suit, and that the defendants go hence without day and recover all costs of court.