**MURPHY et al. v. JAMISON et al.**

No. 3299.

Court of Civil Appeals of Texas. Beaumont.

May 19, 1938.

Rehearing Denied May 25, 1938.

Sewell, Taylor, Morris & Garwood, of Houston, and E. B. Pickett, Jr., of Liberty, for appellants.

A. W. Bounds, R. N. Flick, H. R. Jones, E. J. Fountain, and Andrews, Kelley, Kurth & Campbell, all of Houston, P. C. Matthews, of Liberty, and Clay Tallman, Donald Campbell, and L. A. Thompson, Jr., all of Tulsa, Okl., for appellees.

WALKER, Chief Justice.

This was an action in trespass to try title, statutory petition and answer of not guilty, by appellants, N. W. Murphy and L. W. Morris, against appellees, W. T. Jamison, L. P. Unkel, Clayton N. Smith, and Stanolind Oil and Gas Company, a corporation, for the title and possession of 320.75 acres of land, the west-half of I. & G. N. Rr. Co. Survey No. 9, and 195 acres of I. & G. N. Survey No. 8, lying immediately south of Survey No. 9, making a solid block of 515.75. The case was tried to the court without a jury on documentary evidence as follows:

(1) Maps, patents, and deed vesting W. T. Jamison with title to the land in controversy.

(2) A mineral lease from W. T. Jamison and C. A. Brown to P. M. Granberry dated the 7th day of January, 1919. By the terms of this mineral lease the lessee was vested with title to the oil, gas, and other minerals in place in, on, and under the land in controversy, subject to a royalty interest of ⅛ retained by Jamison, and other royalty interests not material to this appeal. This lease did not cover 100 acres off the eastside of the 320.75 acres. On semiannual payments the lessee could extend the lease for the periods of time provided therein. The parties made the following agreement on the trial of this case:

"It is agreed that the lessee P. M. Granberry under the lease to him from Jamison and Brown of date January 7, 1919, paid the rentals as prescribed or required by the lease in order to postpone drilling operations; the first one prior to July 7, 1919, the second one prior to January 7, 1920, the third one prior to July 7, 1920, and the next one prior to January 7, 1921, and that thereafter that lease terminated, according to its own terms, and that no drilling has ever been undertaken up to this date."

(3) On the 25th day of September, 1919, after executing the lease described above to Granberry on the 7th day of January, 1919, Jamison conveyed by warranty deed the two tracts of land in controversy to E. D. Pruett on the recited consideration of $9,568.40. The following reservation, following immediately the field notes and preceding the habendum clause, is taken from this deed:

"The W. T. Jamison retains 15⁄16 of all the mineral rights from said land, and 15⁄16 of all moneys paid, as shown by a certain mineral lease made to P. M. Granberry, dated January 7th, 1919. This land is sold to E. D. Pruett, subject to all the conditions of the aforesaid lease, the said E. D. Pruett to receive ⅟16 from all minerals or moneys received from said lease."

The only issue presented by this appeal is the construction of this reservation.

(4) Deed dated the 25th day of September, 1919, by C. A. Brown to E. D. Pruett, conveying, on the recited consideration of $3,365.00, a tract of 122.6 acres out of the T. C. Tarver Survey; this deed contained the following reservation:

"The said C. A. Brown retains 15⁄16 of all the Mineral rights from said land, as shown by a certain mineral lease, made to P. M. Granberry dated Jany. 7th, 1919, and the 15⁄16 of all the money payments from said lease, this land is sold to E. D. Pruett, subject to full conditions of the aforesaid lease. The * * * E. D. Pruett, to receive ⅟16 from all rights from said lease."

(5) A mineral lease from Pruett to Brown and appellee Jamison, dated the 25th day of September, 1919, on the land in controversy and the land conveyed to Pruett by Brown; we quote as follows from this lease:

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee." * * *

"It is agreed that this lease shall remain in force for a term of ten years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. * * *

"This lease is subject to certain lease to P. M. Granberry or his assigns covering this land, not in effect until after the termination of said lease."

(6) Deed of trust dated February 1, 1920, whereby Pruett conveyed to Malcum Graham, trustee for Security Trust Company, the land in controversy to secure Security Trust Company in the payment of four notes, each for the sum of $5,000.00.

(7) Deed from Pruett to Security Trust Company, dated August 28, 1926, conveying to Security Trust Company the land in controversy in satisfaction of the indebtedness described in its deed of trust.

(8) Deed dated July 23, 1928, from Security Trust Company to appellant, N. W. Murphy, conveying him the two tracts of land in controversy.

(9) Deed dated the 20th day of June, 1934, by appellant Murphy to appellant L. W. Morris, conveying Morris an undivided ¼ interest in the tracts of land in controversy.

The deeds described above constitute appellants' chain of title.

(10) Claiming title to $^{15}/_{16}$ of all the oil, gas, and other minerals in and under the two tracts of land in controversy by virtue of the reservation in his deed to Pruett, Jamison, on the 17th day of May, 1935, executed a mineral lease on the land in controversy to appellee, B. P. Unkel; on the 18th day of May, 1935, Unkel assigned this lease to appellee Smith; on the 28th day of May, 1935, Smith assigned it to appellee, Stanolind Oil and Gas Company.

(11) Receipts for rental by appellees, keeping in effect the mineral lease from Jamison to Unkel.

The deeds described above constitute in full the chain of title of appellees.

At this point we give appellants' construction of the reservation in the deed from Jamison to Pruett, the point in controversy; appellants contend that, "When W. T. Jamison executed the above-mentioned mineral lease to L. P. Unkel, he had no right or title to any part of or interest in any of said land, but that the $^{15}/_{16}$ interest in all mineral rights and moneys as retained by W. T. Jamison under and by virtue of the above-quoted reservation clause contained in the deed of date September 25th, 1919, from Jamison to Pruett, absolutely terminated and ceased to exist when the P. M. Granberry lease of date January 7th, 1919, referred to in said clause, expired, and, therefore, when that ocurred, E. D. Pruett (the grantee in said deed from Jamison) became the absolute owner of the two tracts of land conveyed thereby, including all the oil and other minerals therein and thereunder."

Over appellants' objection the court received in evidence the following written instruments tendered by appellees.

(12) A mineral lease from Pruett and appellee Jamison to Humble Oil and Refining Company, on 100 acres off the eastside of the 320.75 acres out of I. & G. N. Survey No. 9, conveyed by Jamison to Pruett by deed dated the 25th day of September, 1919, and being part of the land in controversy; we quote as follows from this lease:

"It is agreed and understood that the minerals under these premises are owned, $^{15}/_{16}$ by W. T. Jamison and $^1/_{16}$ by E. D. Pruett and all royalties and rentals payable hereunder will be paid to these parties in that proportion."

(13) On the same day that Jamison conveyed the land in controversy to Pruett, Pruett conveyed to Jamison two certain tracts of land out of H. & T. C. R. Co. Survey Nos. 134 and 137; we quote as follows from this deed:

"The said E. D. Pruett retains $^{15}/_{16}$ of all the mineral rights from said land and $^{15}/_{16}$ of all moneys paid, as shown by a certain mineral lease made to * * * and now recorded on said land. This land is sold to W. T. Jamison, subject to the full condition of the aforesaid lease, the said W. T. Jamison to receive $^1/_{16}$ from all minerals or moneys received from said lease."

(14) As a construction by Pruett of the reservation in his deed to Jamison—in substance the same reservation by Jamison in his deed to Pruett—the court received in evidence a deed dated the 8th day of April, 1924, whereby Pruett conveyed to E. W. Pickett,

"All that certain $^{15}/_{16}$ of all of the oil, gas and other minerals in and under the following described tracts of land situated in Liberty County, Texas, to wit:

"1st. All that part of H. & T. C. R'y Co. Survey No. 134 which lays south of the B. S. L. & W. R'y and contains 74.2 acres of land.

"2nd. All that certain part of H. & T. C. R'y. Survey No. 137, lying south of the B. S. L. & W. Railroad, and containing 200.6 acres, and being the same minerals retained by us in a deed heretofore executed by us to W. T. Jamison on September 25th, 1919, which is duly recorded in Book 94, page 49, of the Deed Records of Liberty County, Texas, to which reference is here made for better description of said tracts of land."

We have given in substance all the documentary evidence received by the lower court; no parol evidence was offered. On the evidence before him, the trial court rendered the following judgment:

"It is accordingly ordered, adjudged and decreed, that plaintiffs N. W. Murphy and L. W. Morris do have and recover of and from the defendants, W. T. Jamison, L. P. Unkel, Clayton N. Smith and Stanolind

Oil and Gas Company, a corporation, the surface, subject to the rights of ingress and egress and one-sixteenth ($\frac{1}{16}$) of the oil, gas and other minerals in and under the hereinafter described tracts of land, but do have and recover nothing against the defendants and each of them as to fifteen-sixteenths ($\frac{15}{16}$) of the oil, gas and other minerals in, on and under said hereinafter described tracts of land, and that defendants (as between defendants, Stanolind Oil and Gas Company, having a valid and subsisting oil, gas and mineral lease covering said property as set out in the lease on May 17, 1935, from W. T. Jamison and wife to L. P. Unkel, and which said lease is now held by Stanolind Oil and Gas Company) be vested with title to said fifteen-sixteenths ($\frac{15}{16}$) of the minerals, together with full and complete rights of ingress and egress for the purpose of developing said oil, gas and other minerals in, on and under said following described tracts of land, situated in Liberty County, Texas." (Here following a description of the land in controversy.)

From that judgment appellants have duly prosecuted their appeal to this court.

### Opinion.

◼ Appellants assign error against the reception in evidence of the mineral lease from Jamison and Pruett to Humble Oil and Refining Company, dated the 13th day of January, 1921. Their point is that this instrument was irrelevant and immaterial, and was executed subsequent to the deed of trust by Pruett to Graham as security for Security Trust Company. These objections are overruled. This instrument was in the chain of title of both appellants and appellees. While it was executed subsequent to the deed of trust to Graham as trustee, it was of record when Security Trust Company took its conveyance from Pruett in satisfaction of his notes, and was therefore in his chain of title. Security Trust Company was thereby vested with notice of the construction placed by Pruett upon the reservation in his deed from Jamison. Security Trust Company did not foreclose its deed of trust by sale under its terms and conditions, but took a conveyance from Pruett at a time when he was asserting title to the land and at a time when his representations as to the nature of his title was binding upon him.

◼◼ The deed from Pruett to Jamison and from Pruett to Pickett, not appearing in the chain of title to the land in controversy, were improperly received. But the trial was to the court without a jury, and there is no suggestion in the record that the court gave any weight to these deeds in construing the reservation in the deed from Jamison to Pruett. On this statement the presumption is that he did not give weight to these deeds, and therefore the error is harmless.

◼ In our judgment the court correctly overruled appellants' construction of the reservation in Jamison's deed to Pruett. On the 25th day of September, 1919, when Jamison executed his deed to Pruett, he owned all the surface rights in the land in controversy and all the mineral rights, subject to the conditions of the mineral lease he had previously executed to P. M. Granberry. His "mineral rights" consisted of his royalty rights under the Granberry lease and the possibility of reverter under that lease. Owning all the interest in the land, subject to the Granberry lease, he had the power to sever his estate in the oil, gas, and other minerals from his estate in the remainder of the realty. Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619.

It is the contention of appellees that the deed from Jamison to Pruett severed $\frac{15}{16}$ of the mineral rights from the surface rights, and that this $\frac{15}{16}$ in the mineral rights was retained in Jamison by the terms of that deed, and that the deed granted to Pruett, in addition to the surface rights, an undivided $\frac{1}{16}$ interest in the mineral rights, subject to the conditions of the Granberry lease.

◼ The Granberry lease created in Jamison a royalty interest in the oil, gas, and other minerals. By his deed to Pruett, Jamison retained in himself "$\frac{15}{16}$ of all the mineral rights from said land, and $\frac{15}{16}$ of all moneys paid, as shown by a certain mineral lease made to P. M. Granberry, dated January 7th, 1919." The distinction between "royalty" and "mineral rights" was clearly recognized by Judge German, speaking for our Supreme Court in Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543. The power to sell "royalty," as distinguished from "mineral rights," would not be questioned, and under Caruthers v. Leonard, Tex.Com. App., 254 S.W. 779, the power to sell "a possibility of reverter" can not be questioned. In Schlittler v. Smith, it was held that (page 544) "a reservation of minerals or mineral rights without limitation would include royalties, bonuses, and rentals."

From that proposition the conclusion follows that the sale of mineral rights without limitation would include royalties. Under the reservation in issue Jamison reserved to himself without limitation $15/16$ "of all mineral rights" in the land, subject to the Granberry lease, and sold to Pruett $1/16$ of the mineral rights—the mineral rights conveyed consisted of "royalty" reserved under the Granberry lease, and the possibility of reverter under that lease.

The legal construction of the language of the reservation in issue forces the conclusion that Jamison was not selling "royalty," and only royalty, under the Granberry lease, and that he was not reserving to himself "royalty," and only royalty, under that lease, but that, as found by the court, he reserved to himself $15/16$ of all oil, gas, and other minerals on and under the land in controversy, and sold to Pruett $1/16$ of the royalty under the Granberry lease and $1/16$ of the possibility of reverter.

■ If there is any ambiguity in the language of the reservation, Jamison and Pruett by the language of their lease to Humble Oil and Refining Company, resolved the ambiguity against appellants' construction of the reservation. We quote again the language of the Humble Oil and Refining Company's lease:

"It is agreed and understood that the minerals under these premises are owned, $15/16$ by W. T. Jamison and $1/16$ by E. D. Pruett and all royalties and rentals payable hereunder will be paid to these parties in that proportion."

Discussing the construction placed by the parties on a reservation in their chain of title, in Klein v. Humble Oil & Refining Company, 126 Tex. 450, 86 S.W.2d 1077, the Commission of Appeals said (page 1080):

"This instrument expresses the interpretation which Stein and Baker placed upon the language of the Stein reservation, and, to our minds, makes clear the real intent of the parties. It declares that it was not necessary for Stein to join in the lease, not, as claimed by Baker, because it did not include the Stein interest, but because that interest was entirely a royalty interest. It interprets the Stein deed as plainly reciting that Stein 'shall only retain a royalty.' The recital that it was not necessary for Stein to join in the Baker lease to Weinert indicates that Stein and Baker considered that the lease was just as effective as if Stein had joined in its execution; that the joinder by Stein would have added nothing thereto. It recites that the Stein interest is a royalty interest, and that Baker 'has acquired a portion of the royalty belonging to Robert Stein.' The declaration that it is a royalty interest means that it has been bought under the terms of the lease."

We do not review the facts of that case but cite it only to illustrate the conclusive effect given by our Supreme Court to a construction by the parties of a reservation in their chain of title. On the same point, see Way v. Venus, Tex.Civ.App., 35 S.W. 2d 467, 468; Havard v. Smith, Tex.Civ. App., 13 S.W.2d 743, and the authorities therein cited. In Cavazos v. Trevino, 6 Wall. 773, 18 L.Ed. 815, it was said (page 785):

"The practical interpretation which the parties, by their conduct, have given to a written instrument in cases like this, is always admitted, and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission. Safer testimony can hardly be presented in relation to any transaction occurring in human affairs."

We shall now consider the principle points made by appellants in support of their construction of the reservation. They contend (1) that, by the language of the reservation, Jamison, "was retaining and reserving for himself $15/16$ of all such royalties and moneys 'as shown by,' that is, that would accrue and mature under the terms of the then existing mineral lease to Granberry, and 'subject to all the conditions of' which, the land conveyed by said lease was sold to Pruett, who, as the reservation clause plainly states, was, by virtue of the conveyance containing this reservation, 'to receive (Only) $1/16$ from all minerals or moneys received from said lease.'"

The answer to this contention is the very language of the reservation. Jamison retained in himself "$15/16$ of all the mineral rights" and not $15/16$ of the royalty rights under the Granberry lease; he granted to Pruett $1/16$ "from all minerals or moneys received from said lease." It is clear from the very language of the reservation itself that the parties were dealing with mineral rights—the royalty and the possibility of reverter—and not simply with the royalty rights under the Granberry lease. As said above, if there is any ambiguity from the

use of the language "retains ¹⁵⁄₁₆ of all the mineral rights from the land," and the grant to Pruett of "¹⁄₁₆ from all minerals or moneys received from said lease," the parties resolved the ambiguity against appellants by their joint lease to Humble Oil and Refining Company.

■ Again (2) appellants assert that the deed from Jamison to Pruett, the deed from Brown to Pruett, and the lease from Pruett to Jamison and Brown must be construed together. That point we concede. Deeds executed at the same time, between the same parties, and in reference to the same subject, must be construed together. Pugh v. Mays, 60 Tex. 191; Baylor v. Hopf, 81 Tex. 637, 17 S.W. 230; Way v. Venus, Tex.Civ.App., 35 S.W.2d 467, 468, and Jackson v. Overton, Tex.Civ.App., 18 S.W.2d 773. But, when construed together, these three instruments do not evidence an intent on the part of Jamison to convey to Pruett all his mineral interest in the land in controversy, subject only to his royalty interest under the Granberry lease. The office of Pruett's lease to Jamison and Brown was clear. Under his deed Pruett owned a ¹⁄₁₆ undivided interest in the mineral rights in the land in controversy, subject to the Granberry lease. In the event that lease was forfeited, he owned his interest free of limitation. Subject to the Granberry lease, he executed to Jamison and Brown the lease on his interest in the land to run for a period of ten years. Clearly indicating that it was not his intent to lease the interest retained by Jamison but only his ¹⁄₁₆ interest granted him by Jamison, he inserted the following clause in this lease:

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee."

Again (3) appellants say, "It is furthermore manifest, from the very language of the reservation itself, that the parties were not dealing with the right of reverter to the whole ¹⁶⁄₁₆ of all minerals under the land, the title to which would automatically reinvest in whomsoever was the owner thereof on any termination of the Granberry lease; but, instead, it is apparent, from the words they themselves chose to express their meaning, that they had in mind, and were deciding and declaring, what fractional proportions each would be the owner of in whatever minerals would be produced 'from said lands under said lease,' and also in whatever money was received as delay rental payments 'from said lease.' Again, unless such is the meaning of the reservation clause, then the grantee in the deed, Pruett, would not, if the explicit and express language of the clause itself is controlling, be vested with any portion of the minerals on termination of the Granberry lease, because such language with certainty clearly declares that the only interest Pruett had in the minerals was the right 'to receive ¹⁄₁₆ from all minerals or moneys received from said lease,' as the clause is written in the Jamison deed, and the right 'to receive ¹⁄₁₆ from all rights from said lease,' as the Brown deed reservation clause has it written."

■ The answer to this contention is that all the language of the reservation must be given effect. When thus construed, it manifests the clear intent found by the court in its judgment, to retain in Jamison ¹⁵⁄₁₆ of the mineral rights and to vest in Pruett only an undivided ¹⁄₁₆ interest.

■ Again (4) appellants invoke the following cardinal principles of construction:

(a) "Every part of the deed is to be given effect if it can be done. The largest estate its terms will permit will be conferred upon the grantee. Where language cannot be harmonized, that interpretation is adopted most favorable to the grantee. That in the description which is false may be rejected if the description is sufficient without it." Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930.

(b) "The language of a deed is the language of the grantor, and, if there be a doubt as to its construction, it should be resolved against him." Curdy v. Stafford, 88 Tex. 120, 123, 30 S.W. 551, 552.

(c) "The rule is that the construction most unfavorable to the grantor will be adopted when the intention is doubtful." Crawford v. Spruill, Tex.Civ.App., 187 S.W. 361, 364.

(d) "The universal rule of construction of deeds, where there is uncertainty, is to adopt that construction most favorable to the grantee, for the grantor selects his own language, and the policy of the law frowns upon forfeitures, conditions, and limitations, and favors the utmost freedom of titles." Couch v. Southern Methodist

University, Tex.Com.App., 10 S.W.2d 973, 974.

(e) "Where different clauses do not admit of being reconciled, but a dominant purpose appears by stressing some particular words, this method of construction may be used as giving key to what the grantor intended."

These general rules can have no office in this case except to resolve any ambiguity in the reservation in favor of appellees. Clearly, in the language of the reservation, Jamison retained $^{15}\!/_{16}$ "of all the mineral rights in the land," and referred to the Granberry lease for a description of the mineral rights. Now, if, as appellants suggest in their third point, supra, the grant to Pruett in the reservation clause, standing alone, was only of a $\frac{1}{16}$ interest in the royalty and a $\frac{1}{16}$ interest in the moneys received from the Granberry lease, these cardinal rules would force the construction that Jamison, by the language of the reservation to himself, intended to grant to Pruett $\frac{1}{16}$ of his mineral rights in the land.

From what we have said it follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.