### JAMES v. DALHART CONSOL. INDE-PENDENT SCHOOL DIST.

No. 6223.

Court of Civil Appeals of Texas. Amarillo.

June 23, 1952.

Rehearing Denied Sept. 2, 1952.

B. N. Richards, Dalhart, for appellant.

King Fike, Dalhart, for appellee.

LUMPKIN, Justice.

This case is to determine the ownership of a tract of land 300 feet square situated in Dallam County, Texas. On April 10, 1920, the appellant, A. M. James, the owner of a number of sections of land situated in Dallam County, conveyed to the trustees of Common School District No. 4 this small tract of land. The conveyance, a general warranty deed, contained this clause:

"The above described property is deeded and conveyed for the use of school purposes only. In the event said property is abandoned for school uses or purposes, the title to the same shall revert to the grantor herein, his heirs, executors, administrators, or assigns. It is expressly stipulated that the oil, gas and mineral rights are expressly reserved and not conveyed with the real estate herein conveyed, and title to the same shall remain in the grantor herein, his heirs, executors, administrators or assigns.

"In the event said property is abandoned for school purposes the grantee herein shall have the right to remove any improvements which have been placed on said land by the grantee."

The school trustees constructed buildings and improvements on the school tract and classes were held there until the fall

term of 1945, when the trustees arranged to send their scholastics to the schools operated by the appellee, Dalhart Consolidated Independent School District. Since the school year 1944–1945, the tract of land and the improvements have not been used for school purposes. On July 6, 1949, Common School District No. 4 was consolidated with the appellee, Dalhart Consolidated Independent School District. Thereafter, so that the premises could be used as a community center, the last board of trustees of the Common School District and the appellee entered into a contract which allowed the board of trustees to retain $2,500 of the school district funds and, in return for the repair of the school building and teacherage, the appellee has permitted the property to be used as a community center. As a result of this agreement, the school tract and its improvements were taken over by the Andy James Community Center and since then it has been used as a community center.

It appears that after the appellant conveyed the land to the school district, he and others on January 31, 1922, executed a deed of trust covering approximately 131 sections of land to Charles C. Woods, trustee for the Inter-State Cattle Loan Company. Among these sections was Section 28, which contains the school tract. The deed of trust, which was to secure the payment of a note in the amount of $250,000, contains this provision:

"It is specifically understood and agreed that this trust deed is secondary and inferior to encumbrances now of record against said lands."

On May 31, 1923, the appellant, his wife and others, by general warranty deed conveyed all of section 28, and other tracts of land, to the James Ranch Company, a corporation. This deed contained this provision:

"In consideration of the sum of $1.00 and other valuable consideration, receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents do grant, sell and convey, unto the James Ranch Company, a Texas corporation of the County of Dallam, State of Texas, its successors and assigns, subject to encumbrances now of record in said county, all the following described * * *."

On June 18, 1925, the Inter-State Cattle Loan Company, as against A. M. James and others, foreclosed in the United States District Court for the Northern District of Texas, Amarillo Division, the deed of trust dated January 31, 1922, which secured the payment of the note in the amount of $250,000. Under the foreclosure proceedings the property was sold to the Inter-State Cattle Loan Company and later, by general warranty deed, was conveyed by that company to the James Ranch Company. Still later, the James Ranch Company conveyed Section 28, less the school tract, to John G. Brown, Jr., and after the dissolution of the James Ranch Company, its stockholders conveyed the school tract by quitclaim deeds to the appellee, Dalhart Consolidated Independent School District.

In August or September, 1951, the appellant, contending that the appellee had had a reasonable time to remove the improvements from the property after it had ceased to be used for school purposes, started to remove one of the buildings from the school tract. The appellee, alleging that it owned the property in fee, filed this suit in which it sought to enjoin the appellant from removing any of the buildings. A temporary injunction was granted, and later the cause was tried before the court without a jury. In its judgment the court decreed that the title to the school tract was in the appellee, awarded appellee damages for the appellant's attempt to remove the school building, and permanently enjoined him from interfering with or attempting to remove the improvements from the property. From this judgment the appellant excepted and has duly perfected his appeal to this court.

The appellee insists that the appellant lost whatever interest he may have had in the school tract when he executed the deed of trust to secure the loan from the Inter-State Cattle Loan Company and when, later, he executed the general warranty deed to the James Cattle Company. The

appellant does not agree with the appellee for two reasons: first, because the interest he retained in the school district was neither alienable nor transferable and therefore any later transaction he may have had did not divest him of a "possibility of reverter," which he maintains remains in him; and second, because the language of the deed of trust, dated January 31, 1922, is broad enough to exclude the school tract from the conveyance. We shall discuss the appellant's contentions in their order.

First, the appellant takes the position that when he executed the warranty deed conveying the tract of land to the school trustees, he conveyed nothing more than a fee simple title with a qualification annexed to it, i. e., "in the event said property is abandoned for school uses or purposes, the title to the same shall revert to the grantor herein." At common law such a fee was called a "determinable fee"—an estate which could remain forever or which could terminate on the happening of the contingency limiting the estate. Although the whole estate was in the grantee or owner, the possibility of reverter remained in the grantor. Tiffany, Real Property, Third Ed., Vol. 1, para. 220. At common law the possibility of reverter was not an estate in land; it was incapable of alienation or devise but it did descend to the grantor's heirs. University of Vermont and State Agricultural College v. Ward, 104 Vt. 239, 158 A. 773, 776. The appellant insists, therefore, that since a possibility of reverter is not alienable, then he did not convey it in the deed of trust and the possibility of reverter remains in him, so that when the school tract ceased to be used for school purposes, it reverted to him.

Our Texas courts, however, do not agree with the appellant. In the case of Caruthers v. Leonard, Tex.Com.App., 254 S.W. 779, the court held that the possibility of reverter after a determinable fee is assignable. This rule of law was affirmed in Watts v. City of Houston, Tex. Civ.App., 196 S.W.2d 553, 556, writ ref. The court said:

"It has been uniformly held in the decisions by the courts of this state and by the weight of authority from other jurisdictions, that the right of re-entry after a condition subsequent has been broken and the right of reverter are not only assignable (Perry v. Smith, Tex.Com.App., 231 S.W. 340 opinion adopted by Supreme Court; Caruthers v. Leonard, Tex. Com.App., 254 S.W. 779) but that these rights may be devised. Myrick v. Leddy, Tex.Civ.App., 37 S.W.2d 308.

"The following authorities from other jurisdictions are in accord with the rule above announced: Ricks v. Merchants National Bank & Trust Co. of Vicksburg, 191 Miss. 322 [323], 2 So.2d 344; Hoyt v. Ketcham, 54 Conn. 60, 5 A. 606."

In our opinion when the appellant executed the deed of trust dated January 31, 1922, to secure his loan from the Inter-State Cattle Loan Company (and when he executed his general warranty deed to the James Ranch Company, dated May 31, 1923), he transferred out of himself whatever right, title or interest (if it may be called an interest) he may have had in the school tract. Therefore, it logically follows that the appellant has no authority to remove any of the improvements from the school tract nor is the appellee under any obligation to remove either the school building or the teacherage from the property.

Secondly, the appellant maintains that the deed of trust did not convey his interest in the school tract because of the following reservation: "It is specifically understood and agreed that this trust deed is secondary and inferior to encumbrances now of record against said lands."

As we have seen, this deed of trust dated January 31, 1922, was against all of Section 28. After the trust deed was foreclosed, title passed to the James Ranch Company; then, on May 31, 1923, the appellant conveyed all of Section 28 to the James Ranch Company by a general warranty deed, which contains this provision:

"Except against encumbrances now of record." In our opinion the grantor did not create in either conveyance, nor did he intend to create, a reservation or exception of the school tract. At the time the deed of trust was executed and at the time the general warranty deed was given by the appellant to the James Ranch Company, there was an outstanding indebtedness against the land, i. e., a deed of trust dated May 19, 1919, to secure the payment of a note in the amount of $200,000. The reservation in this deed of trust is practically identical with the wording contained in the deed of trust dated January 31, 1922.

The rule governing the construction of deeds is laid down by the Supreme Court in the case of Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551, 552:

"The language of a deed is the language of the grantor, and, if there be a doubt as to its construction, it should be resolved against him."

In the case of Jacobs v. Chandler, 248 S. W.2d 825, 829, this court said:

"Our courts have held that the dominant purpose in construing a deed is to ascertain the intentions of the parties as expressed in the deed itself."

A reading of the alleged reservation, quoted above, fails to reveal any language showing that the appellant intended to reserve, save or except anything from the fee conveyed by the deed of trust; nor did the appellant intend to except anything from the fee conveyed by the general warranty deed to the James Ranch Company. Since the appellant did not reserve or except the school tract, he conveyed his right, title and interest to it at the same time he conveyed his right, title and interest to Section 28. 14 Tex.Jur. 1022, discusses this method of exclusion and reservation:

"Instead of defining a subdivision of a larger tract, it is often convenient to designate the tract and to define the land retained by the grantor as excepted therefrom. * * *

"Where the description is by exception, it is essential as in other cases that the land intended to be conveyed be ascertainable with certainty, and to this end it is requisite that the circumstances be as follows: (1) the whole tract should be sufficiently described so as to be identifiable; (2) the words designating the tract should be immediately followed by the words 'Excepting thereout' or 'Excepting therefrom'; * * * (4) the excepted land should be defined with some particularity."

In the case of Houston Oil Co. of Texas v. Williams, Tex.Civ.App., 57 S.W.2d 380, for instance, the court held that the words "save from" and "except out" have a meaning which plainly reflects the grantor's intention to exclude from the deed and to retain to himself some particular property. Therefore, in this case, if the appellant had wished to reserve the school tract or any part or interest therein he would have used words which, to the ordinary man, would have meant that he excluded, reserved or excepted a certain portion of Section 28. There is nothing in the conveyance or the record to show that the grantor intended to except or reserve the school tract. We believe that the language used in the two deeds of trust and the warranty deed was nothing more than an attempt on the appellant's part to protect himself on his warranty. The intent in the 1919 deed of trust and in the 1922 deed of trust was the same and that was merely to protect himself on his warranties and to show that there were outstanding encumbrances against the lands.

In support of our conclusion, we call attention to other portions of the deed to the school trustees. The mineral stipulation reads as follows:

"It is expressly stipulated that the oil, gas and mineral rights are expressly *reserved* and not conveyed with the real estate herein conveyed and title to the same shall *remain* in the grantor herein, his heirs, executors, administrators or assigns." (Italics ours).

There can be no doubt as to the appellant's intention to reserve all of the mineral rights in the school tract to himself,

his heirs, executors, administrators and assigns. This meaning is clear and unambiguous. These are the words which the appellant used when he wished to except or reserve rights to himself, but they are not the words he used in the deeds of trust or the warranty deed to the James Ranch Company. In our opinion the grantor did not create a reservation or exception of the school tract by his deed of trust of January 31, 1922, or by his warranty deed to the James Ranch Company of May 31, 1923.

Because of our disposition of the case, we shall not discuss the appellant's remaining points of error. All of his points of error are therefore overruled, and the judgment of the trial court is affirmed.