KATHERINE KAISER ET AL, Petitioners

v.

CLARA C. LOVE ET AL, Respondents

No. A-8844.   Decided June 27, 1962
358 S.W. 2d 586

*Warren W. Shipman, III, McGown, Godfrey, Logan & Decker,* Fort Worth, for petitioners.

*Hugh D. Reed, Jr.,* Fairfield, for respondents.

JUSTICE GREENHILL delivered the opinion of the Court.

This oil and gas case involves the construction of a reservation in a deed. In that deed, the grantors reserved "all the oil and gas rights in the above tract of land hereby conveyed in the full terms as set forth" in a particular oil and gas lease. The question is whether this provision reserved to the grantors only the royalty under the lease referred to or whether it reserved to the grantors the mineral estate upon the termination of the oil and gas lease; i.e., whether it reserved the royalty only under the particular lease or whether it reserved also the possibility of reverter. In a suit for declaratory judgment, the trial court,

sitting without a jury, held that reservation reserved only the royalty under the existing lease. That action was affirmed by the Waco Court of Civil Appeals. 352 S.W. 2d 885.

The facts are not disputed. No evidence was introduced in the trial court except the stipulations of the attorneys and the written instruments. It was stipulated that the land was owned jointly by T. R. Collard and B. F. Love. Each owned a one-half interest. The Petitioners here, Katherine Kaiser et al., are the heirs and devisees of T. R. Collard and his wife. The Respondents here, Clara Love et al., are the heirs and devisees of B. F. Love. In February, 1915, T. R. Collard, joined by his wife F. R. Collard, and Love executed an oil and gas lease to Breeding. The lease provided for a primary term of five years during which the lessee could defer the drilling of a well by the payment of delay rentals. It was an "unless" lease: after the first year, the lease terminated *unless* the lessee drilled or paid the delay rentals. And, as applicable here, it provided that if a well were drilled and production were had, the lease would continue as long thereafter as oil or gas was produced in paying quantities. The conveyance was made "subject to the royalties hereinafter mentioned". The royalties were 1/8th on oil and $200 per year on gas.

■ Under such an oil and gas lease, the lessee is conveyed a determinable fee. *Stephens County v. Mid-Kansas Oil and Gas Co.*, 113 Texas 160, 254 S.W. 290 (1923) ; *Waggoner Estate v. Sigler Oil Co.*, 118 Texas 517, 19 S.W. 2d 27, (1929) ; Walker, "The Nature of the Property Interests Created by an Oil and Gas Lease in Texas", 7 Texas L. Rev. 1, at 8 (1928), and 8 Texas L. Rev. 483, at 492 et seq. (1930). Upon the termination of such lease, the mineral estate ordinarily reverts to the grantors of the lease, their heirs or assigns. Thus, the "possibility of reverter", while not expressly described in the lease, is created by the lease.

Up to this point, there could be no question but that the grantors, Collard and Love, owned not only the rents and royalties under the lease but also the possibility of reverter. Had the lease terminated without further conveyances or occurrences, Collard and Love would have again owned equally the full mineral estate.

In 1916, after the execution of the above oil and gas lease, Collard, joined by his wife, executed to Love the deed in question. Under this instrument, Collard conveyed the land to Love with this reservation:

"But we F. R. Collard and T. R. Collard do hereby reserve

to ourselves all the oil and gas rights in the above tract of land hereby conveyed in the full terms as set forth in *a* oil and gas lease executed and entered into by B. F. Love, F. R. Collard and T. R. Collard of the first part and ＿＿＿＿＿＿ Breeding of the second part on the 18th day of February A. D. 1915."

■  The oil and gas lease from Love and Collard was assigned ultimately to The Texas Company. There is no evidence that a well was drilled. In 1923, The Texas Company executed a release and quitclaim of its rights under the lease. The release was to B. F. Love et al., and referred to the original lease by the book and page in which it was recorded. Thus the lease was terminated. The question is, to whom did the mineral estate (the working interest) revert? As above stated, the Loves contend that it reverted to them; that all that the Collards reserved was the royalty under the original lease to Breeding; and when that lease terminated, the rights of the Collards terminated also. The Collards (represented by Kaiser et al. here) argue that they reserved *"all* of the oil and gas rights in the above tract of land" which includes the right of reverter; that this is more than simply rights to royalty under a particular lease. Under this construction, the mineral estate reverted one-half to the Loves and one-half to the Collards. We agree with this construction.

■  The reservation was of "all the oil and gas rights in the above tract of land hereby conveyed in the full terms as set forth" in the oil and gas lease to Breeding. The reservation is of "all" oil and gas rights; not simply the royalty. "Oil and gas rights" is a broader term than "royalty". The term, at least as applied here, includes the royalty but is not limited to the royalty. *Murphy v. Jamison,* 117 S.W. 2d 127 (Texas Civ. App.), 1938, error refused. In the *Murphy* case, it was held that "His 'mineral rights' consisted of his royalty rights * * * and the possibility of reverter under that lease." 117 S.W. 2d at 130. The distinction between the reservation of "royalty rights" and the reservation of "mineral rights" was drawn in *Schlittler v. Smith,* 128 Texas 628, 101 S.W. 2d 543 (1937). We think the reservation of "all the oil and gas rights in the above tract of land" is a reservation of the "mineral rights" under the *Schlittler* case and that the remainder of the words in the reservation here in question are not a limitation of those rights.

■  Counsel for Love argues that the deed reserved to the Collards only those rights *set forth in the oil and gas lease* from Collard and Love to Breeding; that the rights reserved (set forth) under this lease were the royalties and no more. While the lease does

provide for the payment of royalties to the grantors, the possibility of reverter is also created by the lease. And while it is not expressly mentioned by name in the lease, the law implies the right of reverter upon termination of the determinable fee of the lessee. It is a right of the lessors which may be sold or conveyed. *Murphy v. Dilworth*, 137 Texas 32, 151 S.W. 2d 1004 at 1006 (1941). It is a "right set forth in the oil and gas lease" by necessary legal implication. We therefore hold that it was reserved as part of "all the oil and gas rights in the above tract of land hereby conveyed in the full terms as set forth" in the lease from Collard and Love to Breeding.

Moreover, we regard the reference to the lease from Collard and Love to Breeding as being descriptive and as being a reference to the document wherein the rights conveyed or retained may be found. Those rights include the possibility of reverter and are not, by the reference to the lease, limited to the royalties contained in the lease.

The judgments of the courts below are reversed and judgment is here rendered for the Petitioners, Katherine Kaiser et al., that they are the owners of one-half of the mineral estate under the 593 acres of land here in question.

Opinion delivered June 27, 1962.