**JUPITER OIL COMPANY, Petitioner,**

v.

**Gene M. SNOW, Respondent.**

**No. D–0811.**

Supreme Court of Texas.

Oct. 23, 1991.

Rehearing Overruled Jan. 8, 1992.

OPINION

CORNYN, Justice.

This is a suit to construe a mineral deed. Jupiter Oil Company (Jupiter) seeks, in addition to damages, a declaratory judgment to establish its claimed ownership of one-half of the minerals underlying a tract upon which Gene M. Snow (Snow), a mineral lessee, has produced oil and gas. The trial court held that Jupiter owned a one-half interest in all minerals underlying the tract. The court of appeals reversed, 802 S.W.2d 354, based on the application of the "repugnant to the grant" rule of *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984). We hold that *Alford v. Krum* is inapplicable in the current case as the deed at issue unambiguously grants a one-sixteenth interest in the mineral estate as well as seven-sixteenths of the grantor's possibility of reverter. Thus, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.[1]

In 1918, J.W. and Malinda Henderson owned all of the minerals underlying a 80–acre tract in Eastland County. The land was at that time subject to an oil and gas lease to the States Oil Corporation (the "States lease"). The States lease reserved a 1/8th royalty to the Hendersons.

On September 27, 1918, the Hendersons conveyed a portion of their mineral interest to Joseph M. Weaver. The proper construction of this 1918 mineral deed (the Henderson deed) is the issue here. Specifically, the issue is the interest conferred in the grantee, Joseph M. Weaver, after the termination of the States lease. Jupiter, the successor in interest to the grantee, claims that the deed gave the grantee an immediate 1/16th mineral interest in the property which expanded to a full one-half mineral interest upon termination of States lease. Snow, the holder of the current oil and gas leases on the subject property, contends that the grantee received only a 1/16th mineral interest.

Joseph W. Russell, San Antonio, for petitioner.

Dennis G. Sheehan, Richard K. Casner, Fort Worth, William B. Wright, Cisco, David E. Keltner, Craig M. Price, Fort Worth, Christopher A. Griesel, Austin, for respondent.

1. Although we hold *Alford* to be inapplicable, we note that it has been overruled this date in

*Luckel v. White*, 819 S.W.2d 459 (Tex.1991).

The first paragraph of the Henderson Deed conveys:

all that certain undivided 1/16 interest in and to all the oil, gas, and other minerals of whatsoever kind and character in and under the following described lot....

The second paragraph acknowledges that the tract in dispute was under lease at the time to the States Oil Corporation. The third paragraph provides that:

[i]n the event the lease now on said land is forfeited or terminated withou[t] producing mineral of any kind, then the grantee herein or his assigns are to have and hold under this conveyance an undivided ½ of all the oil. [sic] gas or other mineral of whatsoever kind character in and under the land herein described, and it is the intention of the grantors herein that in the event said lease is forfeited, then in that event the grantee is to have and hold an equal undivided one half of all such minerals.

■ The common oil and gas lease is a fee simple determinable estate in the realty. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982); *Halbouty v. R.R. Comm'n,* 163 Tex. 417, 432, 357 S.W.2d 364, 375 (1962); *Stephens County v. Mid–Kansas Oil & Gas Co.,* 113 Tex. 160, 174, 254 S.W. 290, 295 (1923). A possibility of reverter is the interest left in a grantor after the grant of a fee simple determinable.[2] *Caruthers v. Leonard,* 254 S.W. 779, 782 (Tex.Comm'n App.1923, holding approved); *James v. Dalhart Consol. Indep. School Dist.,* 254 S.W.2d 826, 829 (Tex.Civ.App.—Amarillo 1952, writ ref'd); See also *Texas Oil & Gas Corp. v. Ostrom,* 638 S.W.2d 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.) (lessor of mineral estate retains non-possessory interest in the minerals which is a possibility of reverter). The grantor's possibility of reverter in the mineral estate becomes a present possessory interest only upon the termination of the lease. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d at 525 (Tex.1982); *Murphy v. Dilworth,* 137 Tex. 32, 37, 151 S.W.2d 1004, 1006 (1941). Thus, upon the termination of the lease, the mineral estate ordinarily reverts to the grantors of the lease, their heirs or assigns. *Kaiser v. Love,* 163 Tex. 558, 560, 358 S.W.2d 586, 587 (1962).

■ Texas courts have long recognized that the owner of a mineral estate can sell or assign the possibility of reverter. *Murphy v. Dilworth,* 151 S.W.2d at 1006; *Gregg v. Caldwell–Guadalupe Pick–Up Stations,* 286 S.W. 1083, 1084 (Tex.Comm'n App.1926, holding approved). For example, in *Tipps v. Bodine,* 101 S.W.2d 1076 (Tex. Civ.App.—Texarkana 1936, writ ref'd), Mrs. Tipps conveyed a 1/16th mineral interest to Mrs. Bodine subject to an existing oil and gas lease to Shaw, Shipp & Spivey. In the third paragraph the deed provided that

in the event that the above described lease for any reason becomes canceled or forfeited, then and in that event an undivided one-half of the lease interest and all future rentals on said land for oil, gas, and other mineral privileges shall be owned by the said Grantee ...

Reading the deed as a whole and reconciling all paragraphs in order to ascertain the intent of the parties, the *Tipps* court held that the initial statement conveyed a present one-sixteenth interest in the mineral estate while the third paragraph granted a portion of the grantor's possibility of reverter. Thus, the *Tipps* court held that the deed unambiguously granted one-sixteenth of the minerals to Mrs. Bodine as well as seven-sixteenths of the grantor's total fourteen-sixteenths possibility of reverter. *Id.* at 1078–79.

■ Such analysis is equally applicable here. The Henderson deed immediately

---

**2.** A possibility of reverter is not the same thing as a reversion. Both terms denote reversionary interests. A reversion, however, is "the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out of him." C.J. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY 94 (1962) (quoting Blackstone). A reversion exists in a grantor whenever something less than a full fee simple has been conveyed. *Id.* In contrast, a possibility of reverter follows a grant of the entire fee simple. *Id.* As a typical oil and gas lease creates a fee simple determinable, the interest left in the grantor by such grant is a possibility of reverter, not a reversion.

gave the grantee a ⅟₁₆th interest in the mineral estate. Upon the termination of the States lease, fee simple title would revest in the Hendersons. Read thus, the third paragraph conveys one half of the Hendersons' possibility of reverter. The effect of this grant is that when the States lease ended, Jupiter's interest in the mineral estate simultaneously expanded into a full one-half by operation of law.

Under this analysis, we hold the deed unambiguous as none of its clauses irreconcilably conflict. The court of appeals therefore erred in resorting to rules of construction which are inapplicable absent clear conflict. *Harris v. Windsor,* 156 Tex. 324, 328, 294 S.W.2d 798, 800 (1956); *Sun Oil Co. v. Burns,* 125 Tex. 549, 552, 84 S.W.2d 442, 445–56 (1935). See also *Averyt v. Grande, Inc.,* 717 S.W.2d 891, 893 (Tex. 1986).

The judgment of the court of appeals is reversed and the judgment of the trial court affirmed.

HECHT, J., concurs.

HECHT, Justice, concurring.

I agree with the result the Court reaches; it comports with, and indeed is required by, our opinion today in *Luckel v. White,* 819 S.W.2d 459 (Tex.1991). I am puzzled, however, that the Court considers *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984), inapplicable to this case. I fail to see a meaningful distinction between this case and *Alford.*

The grantors in *Alford* owned all of the minerals in the property in issue, subject to a lease. So did the grantors in this case. The *Alford* grantors conveyed "one-half of the one-eighth interest in and to all the oil and gas and other minerals". *Id.* at 871. The grantors in this case conveyed "all that certain undivided one-sixteenth (⅟₁₆) interest in and to all the oil and gas and other minerals". These two granting clauses are practically identical.

The deeds in both cases acknowledged the existence of a mineral lease. The *Al-* *ford* deed stated: "And said ... lands now being under an oil and gas lease ..., it is understood and agreed that this sale is made subject to said lease, but covers and includes ⅟₁₆ of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease." *Id.* at 872. The deed in this case states: "It is the intention of the parties ... that the grantee herein is to receive ⅟₁₆ part of the oil, gas or other mineral ... produced by the holder of the lease on said land, that grantors now intend to convey one-half of the interest they now have in such production under said lease." I see no material difference in these provisions.

Both deeds also contemplated the eventual termination of the existing lease. The *Alford* deed stated: "and in the event that the ... lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by [grantee and grantors] each owning a one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents." *Id.* at 872. The deed before us states: "it is the intention of the grantors herein that in event said lease is forfeited, ... the grantee is to have and hold an equal undivided one-half of all such minerals." Although the divergence in the language of the two deeds is greater here than in the two instances previously examined, the effect of each provision appears to be the same.

If *Alford* and this case are not twins, there is certainly a strong resemblance between them. In *Luckel* and this case both, we depart from the rule stated in *Alford* and adopt the rule proposed in its dissent. The confusion left by the Court's failure to say so is unnecessary.